**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JOEL SMITH, JR., CAROLYN SMITH, NORMAN JONES, IRENE JONES and CHRISTOPHER ROBINSON, on behalf of themselves and all others similarly situated, | : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | CIVIL ACTION NO. 1:09-CV-1200-RWS |
| ROBERT PRICE COPELAND, ROBERT P. COPELAND, P.C., JAMES STEPHEN QUAY, ROBERT PATRICK STEPHENS, JOHN E. REDFEARN, III, JEFFREY REED NESSETH, RONNIE L. LUNDY, JR., PERIMETER WEALTH MANAGEMENT GROUP, INC., PHYSICIANS PLANNING GROUP, LLC, JOHN BEASLEY, PROPERTY FINDERS ONLINE, INC., QA3 FINANCIAL, LLC and FIRST TRUST COMPANY OF ONAGA, | : : : : : : : : : : : : : : : | |
| Defendants. | : | |

## ORDER

This case comes before the Court on Defendant First Trust Company of

Onaga's Motion to Dismiss [75], Defendant Robert Patrick Stephens' Motion to

Dismiss [96], Defendant QA3's Motion to Dismiss [100], and MD Planning Group Defendants' Motion to Dismiss [97].  After a review of the record, the Court enters the following Order.

## I.    Background[1]

Plaintiffs allege that they are victims of a $40 million Ponzi scheme orchestrated primarily by Defendant Robert Copeland who pled guilty to criminal charges.  Plaintiffs contend that Copeland and his "Salesperson Defendants" defrauded investors by selling sham securities to fuel the scheme.

## II.    Legal Standard for Motions to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In order to

---

[1]The Court makes no findings as to the factual allegations which are drawn primarily from the Amended Complaint [41].

AO 72A
(Rev.8/82)

withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.  The court does not need to "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.  In light of this standard, the Court now examines the Defendants' Motions to Dismiss.

## III.    Defendant Onaga's Motion to Dismiss [75]

Defendants selected First Trust Company of Onaga ("Onaga") to serve as the custodian of records to administer Plaintiffs' accounts and safeguard the deed investments.  Plaintiffs contend that Onaga was selected in part because of

3

its participation in previous Ponzi schemes.  Onaga was compensated for its

service as a financial records custodian.  As such, Plaintiffs assert causes of

action against Onaga for: violations of 18 U.S.C. §1962 (Count II); violation of

O.C.G.A. § 16-14-4(c) (Count IV); aiding and abetting breach of fiduciary

duties (Count VI); unjust enrichment (Count VII); money had and received

(Count VIII); and punitive damages and costs (Count XI).

Onaga seeks a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of all Counts

brought by the named Plaintiffs in the First Amended Class Action Complaint

(hereinafter "Complaint"), to compel Plaintiffs to pay all costs and fees incurred

by Onaga relating to Plaintiffs' claims and to stay this litigation and compel

arbitration as to any Counts remaining against Onaga.

In order to open a self-directed IRA with Onaga, each Plaintiff signed an

Individual Retirement Account Application ("Application").  This document,

along with the 5305 Individual Retirement Custodial Account Plan Agreement,

the Financial Disclosure, the Disclosure Statement, the Summary of

Accountholder Responsibilities and the Account Information Brochure,

constitute the "Contract" between Onaga and Plaintiffs.

4

Onaga primarily argues that Plaintiffs' claims are limited by the terms of the Contract. As such, Onaga's fiduciary duties to Plaintiffs are defined by the Contract and are limited to the administrative tasks of providing account information as requested by Plaintiffs and as required by federal regulations. (Dkt. No. [75] at 7.) Onaga notes that it was not responsible for "evaluating or selecting any assets for disposition in Plaintiffs' self-directed IRA accounts, and the Contract expressly disavows any [Onaga] liability for loss or damages related to Plaintiffs' investments." (Id.) The language of the Contract explicitly states that Onaga would not offer opinions regarding the value or suitability of investment nor would it act in a representative capacity. (Individual Retirement Custodial Account Agreement §8.05(b), § 8.03.) Onaga contends that this restriction bars Plaintiffs' claims for breach of fiduciary duty. Onaga directs the Court's attention to Abbott v. Chemical Trust, No. 01-2049-JWL, 2001 WL 492388 (D. Kan. April 26, 2001), whose facts and contractual language closely mirror the relevant allegations here. In Abbott, the court ruled on summary judgment that the financial institution had neither a duty to investigate plaintiffs' investments nor to disclose any information it learned regarding the investments. (Id. at *6.) Rather, the custodial agreement between the parties

5

limited the bank's obligations to ministerial functions.  Given the lack of

fiduciary duty, the court granted summary judgment on all plaintiffs' claims.

In the alternative, Onaga argues that because the Contract governs the

relationship of the parties, Plaintiffs' quasi-contractual claims for unjust

enrichment (Count VII) and money had and received (Count VIII) should be

dismissed. (Dkt. No. [75] at 15.)  As to Plaintiffs' claims for aiding and abetting

(Count VI) and federal and state RICO claims (Counts II and IV), Onaga argues

that Plaintiffs have failed to allege wrongful and tortious conduct that would be

a sufficient basis for these claims.  Absent allegations of fraud or an agreement

to engage in wrongdoing, such claims must fail.

In response, Plaintiffs contend that the Contract was procured by fraud

and is therefore unconscionable and unenforceable as against public policy.

(Dkt. No. [117] at 7.)  They argue that the Contract served an illegal purpose

and that Onaga's previous involvement in Ponzi schemes was the motivating

factor behind its selection as the financial custodian. (Id. at 2.)  As such,

Plaintiffs reason that they are not limited or bound by the terms of the Contracts

and that their causes of action remain viable.

6

The reasoning in <u>Abbott</u> is highly persuasive, and the Court has serious reservations regarding the merits of Plaintiffs' claims given the restrictions of the Contract.  However, at this stage of the litigation, the Court cannot conclude whether the terms of the Contract bind the parties.  Specifically, issues remain as to whether Onaga had knowledge of the purpose behind its role as a custodian or acted in concert with co-defendants to participate in a scheme to defraud the investors.  Should the Court ultimately find the Contract valid, Plaintiffs' claims would likely be bound to the limited duties specified in the agreement, and Plaintiffs may well be obligated to pay Onaga's fees and costs in this action.  However, given the allegations and arguments raised, the Court declines to hold Plaintiffs to the terms of the Contract at this time.  As such, Onaga's Motion to Dismiss [75] is **DENIED**.  Given the Court's reservations concerning the validity of the Contract, ordering the parties to resolve the issue through arbitration would be improper.  That request is denied.[2]

---

[2]The parties debate whether Georgia or Kansas law would govern the terms of the Contract and the issues before the Court.  Given the Court's ruling on the uncertainty of whether Plaintiffs are limited by the Contract, such issue need not be addressed at this time.

## IV.    Defendant Robert Patrick Stephens' Motion to Dismiss [96]

Plaintiffs allege that Defendant Robert Patrick Stephens actively participated in the Ponzi scheme to defraud investors in his capacity as a principal of registered broker-dealer Defendant QA3 Financial, LLC ("QA3"). Plaintiffs' Complaint alleges violations of federal RICO, 18 U.S.C. § 1961, et seq. (Counts I and II), violations of the Georgia RICO O.C.G.A. § 16-14-4(a) & (c) (Counts III and IV), cause of action for aiding and abetting breach of fiduciary duty (Count VI), unjust enrichment (Count VII), and equitable action for money had and received (Count VIII).  Defendant Stephens seeks dismissal of all claims [96].

### A.    Federal RICO Claims (Counts I and II)

Defendant Stephens moves to dismiss the Plaintiffs' civil RICO claims under Fed.R.Civ. P. 12(b)(6) asserting that (1) the civil RICO action is barred by the  Private Securities Litigation Reform Act ("PSLRA"), 18 U.S.C. § 1964; and (2) Plaintiffs fail to allege the requisite elements of the claim. (Dkt. No. [96].)

AO 72A
(Rev.8/82)

The PSLRA serves to preclude plaintiffs from asserting RICO claims based upon predicate acts that amount to securities fraud.[3]  However, the Court notes that it is not an absolute bar to a RICO action involving securities. Jacoboni v. KPMG, LLP, 314 F.Supp.2d 1172, 1176 (M.D. Fla. 2004).  The Court must determine whether the conduct plead as the predicate offense is actionable as securities fraud. OSRecovery, Inc. v. One Groupe Int'l, Inc., 354 F. Supp. 2d 357, 368-9 (S.D. N.Y. 2005).  Plaintiffs allege that Defendants' Ponzi scheme was securities fraud and the Court must accept these allegations as true for the purpose of a motion to dismiss under Rule 12(b)(6). (See Compl. [41].)  This same Ponzi scheme is at the heart of this RICO action.  Here, Plaintiffs do not allege that Defendant Stephens prepared or directed the fraudulent documents, but rather that he received 38 wire transfers of funds obtained by fraud and "induced Plaintiffs to enter into investments in

---

[3]As amended by the PSLRA, the RICO statute 18 U.S.C. § 1964(c) provides: (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, *except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.* The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final. (emphasis added)

9

fraudulent, fictitious real estate transactions." (Compl. [41] at ¶ 469; Dkt. No.

[118] at 7.)  Plaintiffs allege that Defendant's investors were misled through

uniform and systematic presentations premised on false promises into

purchasing fraudulent and unregistered securities.  However, Plaintiffs allege

that Defendant Stephens did more than induce investors, rather he "shared the

common purpose of taking funds from Plaintiffs and the Class through fraud

and distributing those funds to members of the enterprise." (Compl. [41] at ¶

539.)

        The Court finds that such alleged predicate actions are so closely

connected and dependent upon the securities fraud as to amount to securities

fraud. See Bald Eagle Area School Dist. v. Keystone Financial, Inc., 189 F. 3d

321, 328 (3d Cir. 1999.)  The actions which Plaintiffs allege Defendant

Stephens committed are not "tangentially connected to the sale of securities"

but rather at the very center of the scheme's success (Dkt. No. [118] at 7-8.).

The alleged numerous acts of wire fraud are without a doubt "in connection

with the purchase or sale of securities." Section 10(b) of the Securities

Exchange Act of 1934, 15 U.S.C. § 78j(b).  Such actions taken to induce new

investors into the scheme in an effort to keep the securities fraud Ponzi scheme

10

alive and distribute the funds amount to conduct undertaken in connection with the purchase and sale of securities.  Accordingly, the allegations against Defendant Stephens would be actionable under federal securities law and cannot support a civil RICO claim after enactment of the PSLRA.[4]  Defendant Stephens' Motion to Dismiss Counts I and II [96] is **GRANTED**.  Counts I and II of the Complaint [41] are **DISMISSED** as to Defendant Stephens.

> B.    Georgia RICO Claims (Counts III and IV)

Plaintiffs allege that Defendant Stephens acquired or maintained an interest in or control of personal property through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(a)[5] and conspired with other Defendants in such conduct in violation of  O.C.G.A. § 16-14-4(c).[6]  Defendant

---

[4]Additionally, the "criminal conviction" exception to the PSLRA bar is inapplicable because only Defendant Copeland has been charged with any crime.  18 U.S.C. §1964(c) states in relevant part that the PSLRA's bar "does not apply to an action against any person that is criminally convicted in connection with the fraud."  The exception is limited to those that have been convicted. See Florida Evergreen Foliage v. E.I. DuPont de Nemours & Co., 165 F.Supp.2d 1345, 1357 (S.D. Fla. 2001).

[5]O.C.G.A. § 16-14-4(a) states:
(a) It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

[6]O.C.G.A. § 16-14-4(c) states:
(c) It is unlawful for any person to conspire or endeavor to violate any of the provisions

Stephens contends that Plaintiffs fail to allege the requisite elements of the crime as to both causes of action. (Dkt. No. [96] at 17.)

First, Stephens argues that Plaintiffs have failed to adequately allege that he knew that the commission payments received from Defendant Copeland were stolen or converted or that he knowingly participated in the Ponzi scheme. (Dkt. No. [96] at 18.)  Plaintiffs allege that Stephens participated in at least two instances of the predicate acts of theft by receiving in violation of O.C.G.A. § 16-8-7.[7]  (Am. Cmpl. [41] ¶ 729.)  "Knowledge that goods are stolen is an essential element of the crime, and such knowledge may be inferred from circumstances which would excite the suspicion of an ordinary prudent person." Maxwell v. State, 182 Ga.App. 571, 572, 356 S.E. 2d 533 (1987).   Stephens notes that the Complaint alleges that he distributed written materials that were prepared and provided by Copeland, referred investors to Copeland for investment purposes, and received commissions from Copeland for the

—————————————————

of subsection (a) or (b) of this Code section.

[7]O.C.G.A. § 16-8-7 provides:
A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner.

12

referrals. (Am. Compl. [41] ¶¶ 28 & 32.) Stephens contends that such allegations fail to assert an active participation or the requisite knowledge. In response, Plaintiffs contend that Stephens "played a major, active, and essential role in the operation *and* management of the Ponzi Scheme." (Dkt. No. [118] at 10 (emphasis in original).) In support, Plaintiffs point to Stephens' role in appointing Onaga as the administrator and custodian of the scheme (Am. Compl. ¶ 30), as well as materials identifying Stephens as the companies' "Representative" (Id. ¶ 32.). Plaintiffs also allege that Copeland and Stephens conferred regularly throughout the Scheme and developed "an avenue to push bogus securities." (Id. ¶ 34.)

Next, Stephens contends that Plaintiffs failed to allege that Stephens' commission of predicate acts proximately caused their injuries. (Dkt. No. [96] at 19.) Stephens claims that his alleged actions of receiving funds in violation of 18 U.S.C. § 2315 are not connected to Plaintiffs' injuries since Stephens received the funds after Plaintiffs invested their money and the alleged fraud had taken place. (Dkt. No. [129] at 11-12.) In response, Plaintiffs argue that while they are not required to prove causation in their pleadings, Stephens' acceptance of the fraudulent funds and the legitimacy he brought to the plan

13

through his investment background were critical to the plan's success, momentum, and profit. (Dkt. No. [118] at 14.)

Finally, Stephens contends that the cause of action under O.C.G.A. § 16-14-4(c) must be dismissed because Plaintiffs have failed to show that Stephens conspired with other Defendants to violate the civil RICO statute. (Dkt. No. [96] at 20.)  Plaintiffs argue that given the factual allegations, it is reasonable to infer that Stephens knew Defendant Copeland was engaging in fraudulent investments and making misrepresentations to investors. (Dkt. No. [118] at 19.)

Upon review, Court finds that Plaintiffs have adequately plead the requisite elements for a Geogia civil RICO claim under  O.C.G.A. § 16-14-4(a) and  O.C.G.A. § 16-14-4(c).  The factual allegations outlined in the Complaint are sufficient to survive a motion to dismiss as to Defendants Stephens' scienter, participation in the Ponzi scheme, and causal link to Plaintiffs' injury.  Further, the Complaint is plausible on its face regarding the conspiracy plead in Count IV stating a cause of action under O.C.G.A. § 16-14-4(c).  Accordingly, Defendant Stephens' Motion to Dismiss Counts III and IV [96] is **DENIED**.

C.    Aiding and Abetting Breach of Fiduciary Duty (Count VI)

In their Complaint, Plaintiffs assert a cause of action against Defendant

Stephens for aiding and abetting Defendants QA3 and Copeland in breaching their fiduciary duty to Plaintiffs. (Compl. [41] Count IV).  The elements of a breach of fiduciary duty claim are "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." Wilchcombe v. Teevee Tunes, Inc., 555 F.3d 949, 959 (11th Cir. 2009).  Under Georgia law, a claim for breach of fiduciary duty exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." O.C.G.A. § 23-2-58.  To establish a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must establish the following elements:

> (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

Insight Technology, Inc. v. FreightCheck, LLC, 280 Ga. App. 19, 25-26, 633 S.E. 2d 373 (2006).

Stephens argues that this claim should be dismissed because Plaintiffs fail to allege the existence of a confidential relationship or that Stephens had any knowledge or active role in the breach.[8] (Dkt. No. [96] at 22-23.) Specifically, Stephens contends that Plaintiffs have not demonstrated that either Defendants QA3 or Copeland had a fiduciary duty to Plaintiffs. As to QA3, Stephens states that "[t]here is a complete absence of any allegations that any of the named Plaintiffs, or any member of the putative Class, ever maintained an account with QA3." (Dkt. No. [129] at 15.) The Court concludes that QA3 may have a fiduciary duty to Plaintiffs through the doctrine of *respondeat superior*. (Infra Part V.C.) Accordingly, Defendant Stephens' argument for dismissal based on lack of fiduciary duty on the part of QA3 is **DENIED**.

With respect to Defendant Copeland, Stephens contends that there are no allegations of "anything more than an arm's-length business relationship between Plaintiffs and Copeland." Id. The Complaint alleges that in 2004,

---

[8]The Court has previously found that Plaintiffs have sufficiently alleged that Stephens was an active participant in the scheme. Supra Part IV.B. Accordingly, the Court will not address this argument further.

16

Copeland began a real estate investment business in which he used investors'
funds "to appraise and purchase residential homes and other property at
distressed prices, hoping to improve and sell these properties to generate
substantial profits" (Compl. [41] at ¶ 22) and that Copeland "held himself out as
an investment professional who specializes in real estate financing activities"
(Id. at ¶ 102). However, the Complaint includes no allegations that Copeland
specifically performed any service for any Plaintiff. Plaintiff has failed to
allege facts that would support the finding of a fiduciary relationship between
Copeland and any of the Plaintiffs. Therefore, to the extent Count VI seeks to
recover for aiding and abetting Copeland's breach of fiduciary duty, it fails.
Accordingly, Defendant Stephens' Motion to Dismiss Count VI [96] is
**GRANTED, in part** and **DENIED, in part.**

> **D.**    Unjust Enrichment and Money Had and Received (Counts VII and
> VIII)

Defendant Stephens seeks a dismissal of Counts VII and VIII for unjust
enrichment and money had and received, respectively, on the grounds that none
of the Plaintiffs' money was ever paid to Stephens. (Dkt. No. [96] at 24.)

17

In order to assert a claim for unjust enrichment, a plaintiff must demonstrate that he personally conferred a benefit on the defendant. J.Carpc, LLC v. Wilkins, 545 F. Supp. 2d 1330, 1340 (N.D. Ga. 2008). Here, Stephens contends that Copeland received funds from plaintiffs and then "independently and personally paid commissions to Stephen." (Dkt. No. [96] at 24.) Plaintiffs argue that the commissions were derived from stolen funds and as such the money is intertwined. (Dkt. No. [118] at 22.)[9]

The Court finds that an issue of fact remains as to whether Stephens received indirect funds from Plaintiffs such that they conferred a benefit on him. Accordingly, Defendant Stephens' Motion to Dismiss Counts VII and VIII [96] is **DENIED.**

> E.    Punitive and Exemplary Damages, Attorney Fees and Costs (Count XI)

Defendant Stephens asserts that Plaintiffs can not recover punitive

---

[9]Defendant Stephens argues in reply, that Plaintiffs have failed to address the argument for dismissal of the claim for money had and received and as such have abandoned that claim. See, e.g., Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004).

The Court finds that Stephens' argument concerning the claim for money had and received is closely related to that of the claim for unjust enrichment and relies upon the same factual contentions. In addressing the underlying basis behind Stephens' argument for dismissal of the money had and received, Plaintiffs have adequately addressed the argument such that the claim is not abandoned.

18

damages or attorney fees because they failed to state any claim against him for which they can recover compensatory damages. Because the Court has denied Defendant Stephens' Motion to Dismiss the Georgia RICO claim, Plaintiffs still have viable claims for punitive damages and attorney fees. Therefore, Defendant Stephens' Motion to Dismiss Count XI is **DENIED**.

In conclusion, Defendant Stephens' Motion to Dismiss [96] is **GRANTED** as to Counts I , II, and the claim in Count VI based on aiding and abetting the breach of fiduciary duty by Copeland and **DENIED** as to Counts III, IV, VII, VIII, XI, and the claim in Count VI based on aiding and abetting the breach of fiduciary duty by QA3. Counts I, II, and the claim in Count VI based on the breach of fiduciary duty by Copeland are **DISMISSED** as to Defendant Stephens.

## V.     QA3's Motion to Dismiss [100]

Plaintiffs allege that QA3 assisted in the success of the Ponzi scheme through its capacity as a Financial Industry Regulatory Authority ("FINRA") registered broker-dealer licensed to sell securities. Several of QA3's agents are listed as defendants, accused of using their real estate investment knowledge to lure new investors into the scheme. (Complaint [41].) Plaintiffs claim that

19

"QA3 permitted its [a]gents to use its offices and its broker-dealer license to sell unregistered securities to fund their Ponzi Scheme." (Dkt. No. [120] at 3.) Accordingly, against QA3, Plaintiffs' Complaint alleges violation of federal RICO 18 U.S.C. § 1962 (Count II), violation of the Georgia RICO statute § 16-14-4(c) (Count IV), cause of action for breach of fiduciary duty and aiding and abetting breach of fiduciary duty (Counts V and VI), unjust enrichment (Count VII), equitable action for money had and received (Count VIII), violations of O.C.G.A. § 10-5-12 (Count IX), violations of O.C.G.A. § 10-5-14(a) (Count X) and punitive damages and fees (Count XI). (Id.)  Defendant QA3 seeks dismissal of all counts under Rule 12(b)(6) [100].

QA3 argues that Plaintiffs have failed to demonstrate any relationship or association to Copeland or his alleged Ponzi scheme. (Dkt. No. [100] at 5.) Rather, the Complaint proceeds to "lump all of the Defendants together through vague and conclusory statements" without alleging that QA3 sold Plaintiffs any interests, received a fee or commission, had knowledge of the scheme, or participated in the fraudulent wire transfers. (Id. at 6-7.)

Plaintiffs contend that QA3 is liable for the actions of its agents under a theory of vicarious liability and general agency law. (Dkt. No. [120] at 5.)  In

20

alleging that Defendants Stephens, Redfearn, Nesseth, Lundy and Strate were all agents of QA3 during their participation in the Ponzi scheme, Plaintiffs argue that the misconduct falls within the scope of the Defendants' employment with QA3. Further, the Complaint alleges that QA3 "knew that Copeland's investment scheme involved the sale of unregistered securities and amounted to a scheme to defraud." (Complaint ¶¶ 153, 166.) Plaintiffs state that QA3 conspired with the agent Defendants in violation of 18 U.S.C. § 1962 and O.C.G.A. § 16-14-4(c) and is liable for their misconduct.

A.    Federal RICO Claim (Counts II)

The Complaint alleges that QA3 and the other Defendants conspired in violation of subsection (c) of 18 U.S.C. §1962. Upon review, the Court finds that Plaintiffs' federal RICO claims are barred under the PSLRA for the same reasons outlined previously in Part IV.A. The alleged actions by QA3 are not tangentially connected to the sale of securities but rather are critical to the scheme's success and undeniably "undertaken in connection with the purchase and sale of securities." Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Accordingly, Defendant QA3's Motion to Dismiss Count II

21

[100] is **GRANTED**.  Count II of the Complaint [41] is **DISMISSED** as to

Defendant QA3.

      B.    Georgia RICO Conspiracy Claim (Count IV)

      Plaintiffs assert a cause of action against QA3 under the Georgia RICO

conspiracy statute O.C.G.A. § 16-14-4(c) for violation of subsection (a) which

makes it unlawful "for any person, through a pattern of racketeering activity or

proceeds derived therefrom, to acquire or maintain, directly or indirectly, any

interest or control of any enterprise, real property, or personal property of any

nature, including money."

      Defendant QA3 argues that the civil RICO conspiracy claim must fail

because: (1) Plaintiffs cannot demonstrate the existence of an agreement

between QA3 and other Defendants as required under the statute; (2) QA3 did

not receive any benefit by participating in the alleged conspiracy; (3) the

Complaint [41] does not allege any predicate act with particularity; and, (4)

Plaintiffs have not demonstrated a direct casual connection between QA3's

alleged conduct and any injury. (Dkt. No.[100] at 11- 18.)

      QA3 argues that *respondeat superior* liability for the actions of its agents

may only be imposed if the principal has derived some benefit from the RICO

violations. (Dkt. No. [125] at 6 citing <u>Quick v. Peoples Bank of Cullman Co.</u>,

993 F.2d 793 797 (11th Cir. 1993); <u>see</u> <u>also</u> <u>Security State Bank v. Visiting</u>

<u>Nurses Ass'n of Telfair County, Inc.</u>, 256 Ga. App. 374, 568 S.E.2d 491 (2002).)

The Complaint alleges no benefit that QA3 stood to receive in the alleged

conspiracy.  A business can not be held liable under Georgia RICO on a theory

of *respondeat superior* when it when it does not receive some benefit from the

RICO violation.  Therefore, Plaintiffs have failed to state a claim against QA3

under Georgia RICO.  Count IV of the First Amended Complaint is

**DISMISSED** as to Defendant QA3.

     C.    <u>Fiduciary Duty Claims (Counts V and VI)</u>

     Plaintiffs allege that "Defendant QA3 is the broker-dealer listed on the

Onaga statements regularly provided to victims" and is "responsible and liable

for the actions of its employees and agents Defendant Stephens, Redfearn,

Nesseth, and Lundy, all of whom acted within the scope of their employment

with regard to their respective pattern of misconduct in furtherance of the

Scheme." (Complaint [41] at ¶¶ 206-207.)  Plaintiffs go into great detail to allege

a fiduciary duty which they claim QA3 owed them as a broker-dealer, including

"mak[ing] recommendations that are consistent with the customer's risk

tolerance, needs, and investment objectives, gather[ing] essential information," and "disclose all material facts to clients, where if failure to do so would defraud or deceive a client." (Id. at 839-41, 845-46.)  What the Complaint does not allege, however, is an actual relationship between QA3 and Plaintiffs.

Despite this shortcoming, Plaintiffs' claim is saved by the argument that QA3 had a fiduciary duty under the doctrine of *respondeat superior* to detect its agents' misconduct.  Plaintiffs allege that Defendants Stephens, Redfearn, Nesseth, Strate, and Lundy were all registered brokers of QA3 while they perpetuated this Ponzi scheme.  Plaintiffs also specifically allege the solicitation of Plaintiffs Norman and Irene Jones by Defendant Stephens after Stephens had actual knowledge of the fraud.  (Compl. [41] at ¶ 45.)  The allegations of the Complaint are sufficient to support liability based on *respondeat superior.* Accordingly, Defendant QA3's Motion to Dismiss Counts V and VI [100] is **DENIED**.

      D.    Unjust Enrichment and Money Had and Received (Counts VII and VIII)

Defendant argues that these claims must fail because QA3 did not receive any benefit in connection with the Ponzi scheme. Tidikis v. Network for Medical

Comms. & Research, LLC, 274 Ga. App. 807, 811 (2005) ("The theory of unjust

enrichment applies when there is no legal contract and when there has been a

benefit conferred which would result in an unjust enrichment unless

compensated.")  Plaintiffs failed to allege any benefits received by QA3 as a

result of its participating in the scheme.  In the absence of such allegations,

Defendant QA3's Motion to Dismiss Counts VII and VIII [100] is **GRANTED**.

    E.    Georgia Securities Act Claims (Counts IX and X)

Plaintiffs contend that QA3 violated a former version of the Georgia

Securities Act making it unlawful to "offer to sell or to sell any security in

violation of this chapter or any rule, regulation, or order promulgated or issued

by the commissioner under this chapter." O.C.G.A. § 10-5-12(a)(1).

Additionally, O.C.G.A. § 10-5-12(a)(2) makes it unlawful, in connection with an

offer to sell, sell, purchase, or offer to purchase any security directly or

indirectly, to "employ a device, scheme or artifice to defraud; make an untrue

statement of a material fact or omit to state a material fact necessary in order to

make statements made, in the light of the circumstances under which they are

made, not misleading; or engage in an act, practice, or course of business that

operates or would operate as fraud or deceit upon a person." O.C.G.A. § 10-5-

12(a)(2) (A)–(C).  Plaintiffs assert that QA3's agents violated these provisions in the scope of their employment, and thus QA3 is liable as an employer.  The Court has previously ruled that Plaintiffs have alleged sufficient facts supporting their theory of *respondeat superior* to survive a motion to dismiss.  See supra Part V.C.  Accordingly, claims regarding QA3's liability under the Georgia Securities Act are not subject to dismissal.  Defendant QA3's Motion to Dismiss Counts IX and X [100] are **DENIED**.

In conclusion, Defendant QA3's Motion to Dismiss [100] is **GRANTED** as to Counts II, IV, VII, and VIII and **DENIED** as to Counts V, VI, IX, and X. Counts II, IV, VII, and VIII of Plaintiffs' Complaint [41] are **DISMISSED** as to Defendant QA3.

## IV.    MD Planning Group Defendants' Motion to Dismiss [97]

Plaintiffs contend that defendants John Redfearn, Ron Lundy and Jeffrey Nesseth, along with their business entities Physicians Planning Group, LLC ("PPG"), MD Planning Group, LLC and Main Street Investment Management, Inc. (the business entities will be referred to as "PPG" and collectively with defendants Redfearn, Lundy and Nesseth as the "MD Planning Group Defendants") participated in the Ponzi scheme to defraud investors.  PPG is the

26

Atlanta-based branch office of Defendant QA3.  Plaintiffs allege that PPG and

its agents participated in the Ponzi scheme and conspiracy by allowing Copeland

access to their extensive clientele base, contributing their experience and

professional licenses, and receiving commission payments derived from stolen

funds. (Dkt. No. [119] at 3.)  The Complaint alleges that the MD Planning Group

Defendants knew that Copeland's investment scheme involved the sale of

unregistered securities and amounted to a scheme to defraud. (First Amended

Complaint [41].)  MD Planning Group Defendants seek dismissal of all claims

pursuant to Rule 12(b)(6) [97].

    A.    <u>Federal and Georgia Civil RICO Claims (Counts I, II, III and IV)</u>

    As an initial matter, Plaintiffs' federal RICO claims are barred under the

PSLRA for the same reasons outlined previously in Parts IV.A and V.A.

Accordingly, Counts I and II are **DISMISSED.**

    Defendants further state that the claims for violation of Georgia civil

RICO, O.C.G.A. § 16-14-4(a) (Count III) and § 16-14-4(c) (Count IV), are

improperly plead and fail as a matter of law. (Dkt. No. [97] at 24-26.)  In

support, the MD Planning Group Defendants argue that Plaintiffs have not

properly plead predicate acts of each of the defendants, nor have they

demonstrated intent to defraud the investors. (Id. at 26.)  Further, the Complaint

lacks the elements of a conspiracy under § 16-14-4(c) because "Plaintiffs never

offer more than generic allegations to show that the MD Planning Group

Defendants were aware of the alleged conspiracy (to the extent one existed),

much less manifested an agreement to commit any acts in furtherance of the

conspiracy." (Id. at 24.)

  In response, Plaintiffs contend that the doctrine of *respondeat superior*

creates liability for PPG based on the alleged actions of its agents, Redfearn,

Lundy and Nesseth.  Such actions, including the magnitude of the transactions

and the receipt of large commission payments, indicates that the agents had the

requisite knowledge and intention to participate in the conspiracy to defraud.

Factual issues remain as to the MD Planning Group Defendants' actual

awareness and involvement in the conspiracy.  However, the Court finds that the

claims for Georgia civil RICO violations are sufficiently plead to survive the

standard for a motion to dismiss.  MD Planning Group Defendants'  Motion to

Dismiss Counts III and IV [97] is **DENIED.**

  B. <u>Aiding and Abetting Breach of Fiduciary Duty (Count VI)</u>

  Plaintiffs contend that PPG and its agents are liable for aiding and abetting

28

Copeland and QA3's breach of fiduciary duty to Plaintiffs and the class [Dkt.

No. 41]. The MD Planning Group Defendants argue that a claim for Aiding and

Abetting a Breach of Fiduciary Duty must fail because Plaintiffs have failed to

allege "that any of the MD Planning Group Defendants 'maliciously procure[d]

an injury to be done to another.'" (Dkt. No. 97 at 34.) In response, Plaintiffs

only identify allegations against Defendant Stephens. While Stephens' conduct

may be attributable to PPG on a theory of *respondeat superior*, Plaintiffs have

alleged no facts that would support a claim against Defendants Redfearn, Lundy,

or Nesseth. Accordingly, MD Planning Group Defendants' Motion to Dismiss

Count VI [97] is **DENIED** as to PPG, but **GRANTED** as to the remaining MD

Planning Group Defendants.

      C.    <u>Unjust Enrichment and Money Had and Received (Counts VII and VIII)</u>

      Similar to the Defendant QA3, the MD Planning Group Defendants argue

that these claims must be dismissed because Plaintiffs have failed to allege the

requisite elements, including that Defendants received any benefit from their

alleged participation in the scheme. Plaintiffs assert that Defendants benefitted

in the "form of unjustified salaries, benefits, bonuses, dividends, commissions,

interest, and grants." (Complaint [41] at ¶ 854.)  At this time, such allegations

are sufficient to establish a cause of action for unjust enrichment and money had

and received.   MD Planning Group Defendants'  Motion to Dismiss Counts VII

and VIII [97] is **DENIED**.

> D.    Punitive and Exemplary Damages, Attorney Fees and Costs (Count
>       XI)

MD Planning Group Defendants contend that Georgia law does not

recognize a separate cause of action for punitive damages or attorney fees.  (Dkt.

No. 97 at 37.)  "Punitive damages may not be recovered where there is no

entitlement to compensatory damages."  Barnes v. White County Bank, 170 Ga.

App. 681, 318 S.E. 2d 74 (1984).  Asserting that Plaintiffs should not prevail on

any of their claims against them, the MD Planning Group Defendants states

Plaintiffs are not entitled to recover punitive damages or attorney fees.

The Court has denied the MD Planning Group Defendants' Motion to

Dismiss the Georgia RICO claim.  Georgia RICO specifically authorizes the

recovery of punitive damages and attorney fees.  O.C.G.A. § 16-14-6(c).  While

Plaintiffs do not have an independent cause of action for punitive damages or

attorney fees, these claims remain viable in the case as potential damages for

other causes of action.  To that extent, the MD Planning Group Defendants'

Motion to Dismiss Count XI [97] is **DENIED**.

In conclusion, MD Planning Group Defendants' Motion to Dismiss [97] is

**GRANTED** as to Count I and II for all MD Planning Group Defendants and as

to Count VI for Defendants John Redfearn, Ron Lundy, and Jeffrey Nesseth.

The Motion [97] is **DENIED** as to Counts III, IV, VII, VIII, and XI for all MD

Planning Group Defendants and as to Count VI for Defendants Physicians

Planning Group, LLC, MD Planning Group, LLC, and Main Street Investment

Management, Inc.  Counts I and II of the Complaint [41] are **DISMISSED** as to

Defendants John Redfearn, Ron Lundy, Jeffrey Nesseth, Physicians Planning

Group, LLC, MD Planning Group, LLC, and Main Street Investment

Management, Inc., and Count VI is **DISMISSED** as to  Defendants John

Redfearn, Ron Lundy, and Jeffrey Nesseth,

## Conclusion

Based on the foregoing, Defendant First Trust Company of Onaga's

Motion to Dismiss [75] is **DENIED**.

31

AO 72A
(Rev.8/82)

Defendant Stephens' Motion to Dismiss [96] is **GRANTED** as to Counts I , II, and the claim in Count VI based on aiding and abetting the breach of fiduciary duty by Copeland and **DENIED** as to Counts III, IV, VII, VIII, XI, and the claim in Count VI based on aiding and abetting the breach of fiduciary duty by QA3.  Counts I, II, and the claim in Count VI based on the breach of fiduciary duty by Copeland are **DISMISSED** as to Defendant Stephens.

Defendant QA3's Motion to Dismiss [100] is **GRANTED** as to Counts II, IV, VII, and VIII and **DENIED** as to Counts V, VI, IX, and X.  Counts II, IV, VII, and VIII of Plaintiffs' Complaint [41] are **DISMISSED** as to Defendant QA3.

MD Planning Group Defendants' Motion to Dismiss [97] is **GRANTED** as to Count I and II for all MD Planning Group Defendants and as to Count VI for Defendants John Redfearn, Ron Lundy, and Jeffrey Nesseth.  The Motion [97] is **DENIED** as to Counts III, IV, VII, VIII, and XI for all MD Planning Group Defendants and as to Count VI for Defendants Physicians Planning Group, LLC, MD Planning Group, LLC, and Main Street Investment Management, Inc.  Counts I and II of Plaintiffs' Complaint [41] are **DISMISSED** as to Defendants John Redfearn, Ron Lundy, Jeffrey Nesseth,

32

Physicians Planning Group, LLC, MD Planning Group, LLC, and Main Street

Investment Management, Inc., and Count VI is **DISMISSED** as to  Defendants

John Redfearn, Ron Lundy, and Jeffrey Nesseth.

As required by the October 1, 2009 Order [Dkt. No. 114], the parties shall

confer and endeavor to reach agreement on a proposed discovery scheduling

order.  In the event the parties are unable to reach agreement within seven (7)

days of the entry of this Order, each party may submit a proposed discovery

scheduling order within fourteen (14) days of the entry of this Order.

**SO ORDERED** this  21st  day of May, 2010.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)